# EXHIBIT A

FILED: NEW YORK COUNTY CLERK 02/24/2011
NYSCEF DOC. NO. 22
INDEX NO. 650087/2010
RECEIVED NYSCEF: 02/24/2011

13-12269-reg    Doc 13-1    Filed 07/15/13    Entered 07/15/13 18:08:19    Exhibit A
Pg 2 of 19

## SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY

### JUSTICE SHIRLEY WERNER KORNREICH     PART 54

| | |
|---|---|
| Index Number : 650087/2010 | |
| GARRISON COMMERCIAL | |
| vs | INDEX NO. 650087/10 |
| NMP-GROUP LLC, | MOTION DATE 11/4/10 |
| Sequence Number : 003 | MOTION SEQ. NO. 003 |
| PARTIAL SUMMARY JUDGEMENT | MOTION CAL. NO. |

The following papers, numbered 1 to _____ were read on this motion to/for _partial summary judgment_
38-43, 48, 60-63

| | PAPERS NUMBERED |
|---|---|
| Notice of Motion/ Order to Show Cause — Affidavits — Exhibits ... | 38-43, 48 |
| Answering Affidavits — Exhibits | 60-61 |
| Replying Affidavits | 62-63 |

Cross-Motion:  ☐ Yes   ☑ No

Upon the foregoing papers, it is ordered that this motion

Scanned to 119 on 2/23/11

**MOTION IS DECIDED IN ACCORDANCE WITH ACCOMPANYING MEMORANDUM DECISION AND ORDER.**

Dated: 2/17/11           JUSTICE SHIRLEY WERNER KORNREICH
                                                                                J.S.C.

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE FOR THE FOLLOWING REASON(S):

Check one:   ☐ FINAL DISPOSITION    ☒ NON-FINAL DISPOSITION
Check if appropriate:   ☐ DO NOT POST    ☒ REFERENCE
                                ☐ SUBMIT ORDER/ JUDG.    ☐ SETTLE ORDER/ JUDG.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: PART 54
------------------------------------------------------------------X  **DECISION & ORDER**
GARRISON COMMERCIAL FUNDING IV
REO LLC,

                     Plaintiff,                            Index No. 650087/2010

    -against-

NMP-GROUP LLC, ET. AL.,

                     Defendants.
------------------------------------------------------------------X
GATEWAY DEMOLITION CORP., on behalf of itself
and all other parties who are similarly situated,

                     Third-Party Plaintiff,

    -against-

STABFUND (USA) INC., GARRISON COMMERCIAL
FUNDING IV REO LLC, UBS REAL ESTATE
SECURITIES INC., NMP-GROUP LLC,
JOHN DOES 1 THROUGH 10,

                     Third-Party Defendants.
------------------------------------------------------------------X

**KORNREICH, SHIRLEY WERNER, J.:**

      Motion Sequences 002, 003, 004, and 005 are consolidated for disposition.

      The principal action arises out of a 2007 loan agreement between plaintiff's predecessor, UBS Real Estate Securities Inc. (UBS), and defendant NMP-Group LLC (NMP, Owner, or Borrower) (the Loan Agreement). The loan was secured by a mortgage (the Mortgage) on a parcel of commercial real property located in Manhattan (the Property). In exchange, NMP executed a Promissory Note to UBS (the Note). On April 2, 2009, UBS assigned its interests under the Loan Agreement, Note, and Mortgage to StabFund (USA) Inc. (StabFund), which then

1

assigned its interests to Garrison Commercial Funding IV REO LLC (Garrison) on April 8, 2010. Prior to the Garrison assignment, on February 5, 2010, StabFund filed a complaint for foreclosure of the Mortgage against NMP and certain alleged mechanic's lienors on the Property. After the assignment, on June 10, 2010, the court granted Garrison's motion to be substituted for StabFund as the plaintiff in this action. Garrison now moves for partial summary judgment on its foreclosure claim. Mot. Seq. 003. NMP opposes the motion.

On June 22, 2010, Gateway Demolition Corp. (Gateway), one of the mechanic's lienor defendants, filed a third-party complaint against Garrison, StabFund, UBS, and NMP for diversion of lien law trust assets. Gateway also asserted a claim for an accounting against NMP. Both NMP and the lenders – Garrison, Stabfund, and UBS – now move to dismiss Gateway's complaint. Mot. Seqs. 002, 004. Gateway opposes both motions. The Lenders also move for a protective order to strike or limit certain of Gateway's discovery requests. Mot. Seq. 005. Gateway opposes the motion.

I.   *Background*

On November 6, 2007, UBS loaned $29 million to NMP. In return, NMP executed a Mortgage, Security Agreement, Assignment of Rent and Fixture Filing (the Mortgage) which granted UBS a security interest in the Property, located at 176 Madison Avenue, Manhattan, and on certain fixtures and personal property of NMP. NMP also executed and delivered to UBS the Note requiring NMP to pay the outstanding principal and accrued interest on the Note by November 9, 2009.

NMP would receive the amount borrowed ($29 million) in "only one (1) borrowing" and would use the loan proceeds, in part, to deposit certain "Reserve Funds." Doherty Aff. Exh. A,

2

Loan Agreement §§ 2.1.2, 2.1.4. "Reserve Funds" were defined as "the Insurance Funds, The Tax Funds, the Debt Service Reserve Funds, the Demolition Funds, and the Buyout-Reserve Funds." See Doherty Aff. Exh. A, Loan Agreement § 1.1 ("Reserve Funds"). Section 6.4.1 of the Loan Agreement required that NMP "deposit with Lender [then UBS] an amount equal to Two Million . . . ($2,000,000) for costs of demolition of the existing improvements located at the Property." This $2,000,000 constituted the "Demolition Funds." Doherty Aff. Exh. A, Loan Agreement § 6.4.1.

Under the Loan Agreement, the account established for the deposit of . . . Demolition Funds constituted a "deposit account" or "securities account" within the meaning of the Uniform Commercial Code. See Doherty Aff. Exh. A, Loan Agreement §§ 3.1.38(b), 1.1 ("Accounts"). NMP granted UBS a security interest in the account established for the deposit of the Demolition Funds, and NMP and UBS agreed that the account is "not in the name of any Person other than Borrower [NMP]." See Doherty Aff. Exh. A, Loan Agreement §§ 3.1.38(a), 3.1.38(d). UBS, however, "without consent by Borrower [NMP]" could direct "disposition of the [account] and all sums at any time held, deposited, or invested therein." See Doherty Aff. Exh. A, Loan Agreement § 3.1.38(c).

The Demolition Funds were to be disbursed from the account to NMP to pay for demolition costs, but the Lender was not required to disburse these funds "more frequently than once each calendar month." Doherty Aff. Exh. A, Loan Agreement § 6.4.2. Further, "on the date . . . [NMP's] request [for payment was] received by Lender and on the date such payment [was] to be made, no Event of Default shall exist and remain uncured." Doherty Aff. Exh. A, Loan Agreement § 6.4.2(b)(ii). The Third Amendment to the Loan Agreement (the Third Amendment)

3

Pg 6 of 19

defined an Event of Default as NMP's failure "to deliver the Second Interest Reserve Funds on or prior to the Second Interest Reserve Date [May 8, 2009]." Doherty Aff. Exh. A, Third Amendment §§ 10.1(xx), 6.6.2. Garrison alleges that NMP was in default for failure to pay the Second Interest Reserve Funds as of May 8, 2009 and that the default remained uncured. Specifically, Garrison alleges that NMP failed to pay the outstanding balance of the principal and accrued interest under the Note prior to the maturity date. NMP does not dispute this allegation. Failure to pay any debt when due constituted an "Event of Default" under the Loan Agreement. *See* Doherty Aff. Exh. A, Loan Agreement § 10.1(a)(1).

On May 14, 2008, NMP had entered into a contract for demolition work with Gateway (the Demolition Contract). Gateway, who was paid $888,470.45 under the contract, claims that NMP still owes it a "final payment" of $60,014.55. NMP claims that this payment is not due.

The Demolition Contract provides:

Claims must be initiated by written notice to the Architect and the other party. *See* Mermelstein Aff., Exh. A § 4.3.2.

Any Claim arising out of or related to the Contract . . . shall, after initial decision by the Architect or 30 days after submission of the Claim to the Architect, be subject to mediation as a condition precedent to arbitration or the institution of legal or equitable proceeding by either party. *See* Mermelstein Aff., Exh. A. § 4.5.1

An initial decision by the Architect shall be required as a condition precedent to mediation, arbitration or litigation of all Claims between the Contractor and Owner *arising prior to the date final payment is due*, unless 30 days have passed after the claim has been referred to the Architect with no decision having been rendered by the Architect. [emphasis supplied] *See* Mermelstein Aff., Exh. A § 4.4.1.

Final payment, constituting the entire unpaid balance of the Contract Sum, shall be made by the Owner to the Contractor no later than thirty (30) days after the date upon which . . . the Premises are free and clear from any and all violations

4

caused by Contractor in connection with the completion of the Work hereunder, and the same have been removed of record . . . . *See* Mermelstein Aff., Exh. A § 5.2.1.

NMP claims that Gateway's $60,014.55 claim arose "prior to the date final payment was due," because on June 15, 2010 the New York City Department of Buildings (the DOB) issued a violation to NMP. According to NMP, the violation was issued as a result of Gateway's failure to safeguard a building adjacent to the demolition work. *See* Mermelstein Reply Aff. ¶ 4.

In opposition, Gateway alleges that it completed the demolition work in February 2009 and submitted a final invoice to NMP through NMP's agent, IC Consulting, on April 6, 2009. *See* Richman Aff. Exh. 2. IC Consulting requested and received a final lien waiver as a condition precedent to making the final payment. *See* Richman Aff. Exh. 4. Then, on May 12, 2009, IC Consulting assured Gateway that funding to make the final payment "should be [available] any day." *See* Richman Aff. Exh. 6. On April 23, 2009, NMP requested funding from its then lender, StabFund, the successor of UBS. StabFund refused to pay invoking the May 8, 2009 event of default by NMP. As a result, StabFund never paid NMP, and, in turn, NMP never paid Gateway the final invoice for $60,014.55.

*II.    Discussion*

    *A.    Garrison's Foreclosure Claim*

"In a foreclosure action, a mortgagee's prima facie entitlement to judgment as a matter of law is demonstrated by proof of the mortgage and evidence of default." *CitiFinancial Company (DE) v McKinney*, 27 AD3d 224, 226 (1st Dept 2006). "Upon such a showing, it is incumbent upon the party opposing foreclosure to come forward with evidence sufficient to raise a fact issue as to any available defense." *Id.* "Should it appear from affidavits submitted in opposition to the

5

motion that facts essential to justify opposition may exist but cannot be stated, the court may deny the motion or may order a continuance to permit affidavits to be obtained or disclosure to be had . . . ." CPLR § 3212(f). However, "[a] grant of summary judgment cannot be avoided by a claimed need for discovery unless some evidentiary basis is offered to suggest that discovery may lead to relevant evidence." *Bailey v New York City Transit Authority*, 270 AD2d 156, 157 (1st Dept 2000). "Affidavits devoid of evidentiary facts and consisting of mere conclusions, speculation, and unsupported allegations are insufficient to defeat a motion for summary relief." *Castro v New York University*, 5 AD3d 135, 136 (1st Dept 2004).

Garrison has demonstrated that NMP granted a mortgage on the property to UBS and that Garrison, is the current holder of that mortgage. The Mortgage secures repayment of the Note by NMP to UBS, and Garrison, through StabFund, is the assignee of UBS's interest in the Note. Garrison has submitted affidavits by persons with personal knowledge of the transaction that NMP failed to pay the outstanding balance of the principal and accrued interest under the Note, prior to the maturity date of November 9, 2009. NMP does not dispute this allegation. Under the Loan Agreement, such failure constituted an "Event of Default." Having demonstrated proof of the mortgage and an event of default, the mortgagee, Garrison, makes a *prima facie* case that it is entitled to summary judgment on its foreclosure claim. *See CitiFinancial Company*, at 226.

NMP claims that its default was caused by UBS's failure to pay requisitions within a reasonable time, as required by the Loan Agreement. In support of this claim, NMP submits an affidavit by its attorney and principal alleging that UBS's delays in paying requisitions delayed the demolition of the Property, which "materially effected [sic] NMP's ability to either obtain the additional financing necessary to pay the Construction Loan, and/or materially effected [sic]

6

NMP's ability to refinance the loan." Based on this affidavit, NMP claims it is entitled to discovery from the Lenders to substantiate its defense. The court disagrees.

The allegations in NMP's affidavit are conclusory and, thus, cannot be the basis for defeating a motion for summary judgment. *See Castro*, at 136. Further, NMP offers no evidentiary basis "to suggest that discovery [from the Lenders] may lead to relevant evidence." *See Bailey*, at 157. Evidence bearing on the causal connection between UBS's alleged delays in payment and NMP's ability to obtain financing is, if anything, in the possession of NMP. Consequently, NMP's claimed need for discovery cannot avoid a grant of summary judgment on Garrison's foreclosure claim. *See Bailey*, at 157. NMP also is liable, under the Loan Agreement and the Note, for default interest and reasonable attorney's fees and costs related to the foreclosure. *See* Doherty Aff. Exh. A, Loan Agreement § 2.3.3, Note art. 3 (default interest); Loan Agreement § 11.13(a)(vi), Note Art. 3, Mortgage § 9.1 (costs and attorney's fees).

There remain, however, the mechanics liens. Lien priorities are not strictly matters of statutory creation but are governed in the first instance by the common law rule of "first in time first in right" in the absence of a statutory directive to the contrary. *City and County Savings Bank v Oak Wood Holding Corp.*, 88 Misc 2d 198, 1999-200 (Sup Ct Chemung Cty1976). By statute, a mortgage recorded subsequent to the commencement of improvements does not have priority over mechanic's liens arising out of the improvement if the mortgage contains the covenant required by Lien Law § 13(3). *See* Lien Law §§ 13(5), 13(3). Lien Law § 13(3) requires that "a building loan mortgage and every mortgage recorded subsequent to the commencement of the improvement . . . shall contain a covenant by the Mortgagor that he will receive the advances secured thereby . . . as a trust fund to be applied first for the purpose of

7

paying the cost of improvement . . ."

On the other hand, a mortgage containing the covenant is entitled to priority over a subsequently recorded mechanic's lien – even if the mortgage was recorded subsequent to commencement of the improvement – because, in that case, the statutory directive of Lien Law § 13(5) would not apply to displace the "first in time first in right" common law priority rule. *In re Plainview Realty, Inc.*, 1 BR 759, 761-62 (Bankr Ct EDNY 1980) (applying New York law) (mortgage recorded after commencement of improvement containing covenant that advances received thereunder would be applied first toward cost of improvement was entitled to priority over subsequently filed notice of mechanic's lien); *see also City and County Savings Bank*, at 199-200; *Finest Fruits, Inc. v Korean Produce Corp.*, 1988 LEXIS 9908 * 5-7 (SDNY 1988) (discussing relation between statutory directives and common law lien priorities).

Here, the Mortgage was recorded on November 26, 2007. *See* Doherty Aff. Exh. A., Mortgage: "Recording and Endorsement Cover Page." Hence, even if improvements commenced before November 26, 2007, the Mortgage had priority over subsequently filed mechanic's liens. *See In re Plainview Realty*, at 761-62. Garrison alleges that the mechanic's lienors in this case admitted in their answers to Garrison's complaint that they filed the liens well after the Mortgage was recorded. Garrison, however, fails to submit these answers in support of its motion for partial summary judgement, and the answers are not filed in the court's electronic filing system. For this reason, Garrison's motion for summary judgment on its foreclosure claim is denied with leave to renew on proper papers. *See* CPLR § 3212 (b) (requiring that motion for summary judgment be supported by copy of pleadings).

B.   *NMP's Motion to Dismiss Gateway's Complaint*

8

On a motion to dismiss, pursuant to CPLR 3211(a)(7), the facts alleged in the complaint are accepted as true and the plaintiff is entitled to the benefit of every favorable inference. *Rovello v Orofino Realty Co.*, 40 NY2d 633, 634 (1976); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v Wise Metals Group, LLC*, 19 AD3d 273, 275 (1st Dept 2005). A court may freely consider affidavits submitted by the plaintiff to remedy any defects in the complaint. *Rovello*, at 635-636. "Affidavits submitted by a respondent will almost never warrant dismissal under CPLR 3211 *unless* they establish conclusively that [petitioner] has no [claim or] cause of action." [citations omitted] *Lawrence v Miller*, 11 NY3d 588, 595 (2008).

NMP's motion to dismiss Gateway's complaint, based on Gateway's failure to submit its claim to the Architect, is denied. The Demolition Contract provides that "an initial decision by the Architect shall be required as a condition precedent to mediation, arbitration or litigation of all Claims between the Contractor and Owner *arising prior to the date final payment is due*." [emphasis supplied]. Therefore, in order to succeed in its motion to dismiss, NMP must conclusively establish both that the Architect has not made an initial decision on Gateway's claim *and* that the claim arose prior to the date final payment was due. The parties agree that Gateway never submitted its claim to the Architect. Hence, *a fortiori*, the Architect did not make an initial decision on the claim. But, NMP fails to show that Gateway's claim arose prior to the date final payment was due.

Under the Demolition Contract, final payment was due

> no later than thirty (30) days after the date upon which . . . the Premises are free and clear from any and all violations caused by Contractor in connection with the completion of the Work hereunder, and the same have been removed of record. [emphasis supplied]

According to NMP, final payment to Gateway is not yet due because on June 15, 2010 – more than a year after Gateway's demolition work was completed – DOB issued a violation to NMP, which still remains of record. To support this contention, NMP submits an affidavit by a member and general counsel of NMP averring that the violation was issued as a result of Gateway's failure to safeguard a building adjacent to the demolition work. This affidavit does not establish conclusively that the violation was caused by Gateway in connection with the completion of the work under the Demolition Contract. In fact, in April 2009, NMP submitted Gateway's invoice for final payment to StabFund, conduct indicative of its belief that the payment was then due. Moreover, in May 2009, NMP assured Gateway that payment was forthcoming. It is only now – almost two years after the demolition work was completed – that NMP claims that a violation issued after demolition was completed, bars Gateway from litigating the claim. In sum, NMP has failed to establish that Gateway's claim arose prior to the date final payment was due.

### C.    *The Lenders' Motion to Dismiss Gateway's Complaint*

The Lenders' motion to dismiss Gateway's complaint is also denied.

> [Funds] received by an owner for or in connection with the improvement of real property . . . and any right of action due or earned or to become due or earned, shall constitute assets of a trust . . . for payment of the cost of improvement . . . . Lien Law §§ 70(1), 71(1).

> Every such trust shall commence at the time when any asset thereof comes into existence, *whether or not there shall be at that time any beneficiary of the trust.* The trust of which the owner is a trustee shall continue with respect to every asset of the trust until every trust claim arising at any time during the improvement has been paid or discharged, or until all such assets have been applied for the purposes of the trust. (emphasis supplied) Lien Law § 70(3).

> The term "improvement" . . . includes the demolition . . . of, any real property and

any work done upon such property or materials furnished for its permanent improvement. Lien Law § 2(4).

Under the plain language of the Loan Agreement, NMP received $2 million to pay for the costs of demolition of the existing improvements located at the Property. Since the funds were received by NMP for demolition, they were funds "received by an owner for or in connection with the improvement of real property." *See* Lien Law §§ 70(1), 2(4). As such, the Demolition Funds "constitute[d] assets of a trust . . . for payment of the cost of improvement . . ." Lien Law §§ 70(1), 71(1).[1]

The Lenders' argument to the contrary is based on their contentions that NMP never received the funds and that the funds were "retained" by UBS and payable to NMP under certain conditions that were specified in the Loan Agreement. These allegations contradict the plain language of the Loan Agreement. First, under the Loan Agreement, NMP received $29 million in one borrowing. NMP then deposited $2 million of the loan proceeds as Demolition Funds in a "deposit account" with UBS. The deposit account was "not in the name of any Person other than Borrower [NMP]," which means that the deposit account was *under NMP's name*.[2] Ergo, NMP, as the holder of the deposit account, "received" the Demolition Funds, which constituted trust assets in the deposit account. *See Bray Brothers v Marine Trust Co.*, 1937 NY Misc LEXIS 1233 **1-2 (Sup Ct Erie Cty 1937) ("Trust funds do not lose their character by being deposited

---

[1] The same is not true of the other "Reserve Funds" – the Insurance Funds, The Tax Funds, the Debt Service Reserve Funds, and the Buyout-Reserve Funds – which were not received " for or in connection with the improvement of real property."

[2] The contractual requirement to deposit the funds in NMP's name dovetails with the statutory requirement that "[i]f the trustee [owner] deposits trust funds in a bank or other depository *they shall be deposited in his name.*" Lien Law § 75(1).

11

in a bank for the individual credit and account for the person who is trustee.").

Additionally, NMP could not have granted UBS a security interest in the deposit account unless it had rights in that account. *See* UCC § 9-203(b)(2) ("a security agreement is enforceable against the debtor and third parties with respect to the collateral only if: . . . (2) the debtor has rights in the collateral. . . .").[3] The Loan Agreement gave UBS the right to direct disposition of the deposit account and all sums at any time held, deposited, or invested therein, without the consent of NMP. *See* Doherty Aff. Exh. A §§ 3.1.38(c). UBS's right, however, is consistent with NMP's *concurrent* right to dispose of funds from the same deposit account. *See* UCC § 9-104(b). Garrison fails to establish that NMP never received the Demolition Funds. At most, it has shown that UBS also retained certain rights over the account where the funds were deposited.

The Lenders further argue that Gateway's claims against them should be dismissed because a lender cannot be a lien law trustee. The court disagrees. Under certain circumstances, lenders are lien law trustees. *See, e.g., Aspro Mechanical Contracting, Inc. v Fleet Bank, N.A.*, 293 AD2d 97, 98 (2d Dept 2002) (lender who takes assignment of contract to improve and convey real property as security for building loan can be liable as lien law trustee).

In *Aspro*, a developer contracted with the New York City Housing Authority (NYCHA) to acquire a certain property in Brooklyn, construct residences on the property, and then convey

---

[3] UBS had "control" over the deposit account because the account in this case was with the secured party, who was also UBS. *See* UCC § 9-104(a)(1) ("A secured party has control of a deposit account if: (1) the secured party is the bank with which the deposit account is maintained."). "Control," however, was important only in so far as it perfected UBS's security interest in the deposit account. *See* UCC § 9-312(b)(1). It did not give UBS any property interest in the deposit account, and the Demolition Funds contained therein, above and beyond the interest of a secured creditor with a perfected security interest in the collateral.

12

title to the improved property to NYCHA for a price. *Id.* Norstar Bank made construction loans secured by mortgages to the developer/owner. *Id.* As additional security for the loans, the developer assigned to Norstar Bank all of its "right, title and interest in, to and under" its contract with NYCHA. *Id.* Pursuant to the assignment, when title to the improved property was conveyed to NYCHA, the proceeds of the sale were paid directly to Norstar Bank. *Id.* Plaintiffs – subcontractors who worked on the project and alleged that they were not paid – brought an action against Norstar Bank as a lien law statutory trustee. *Aspro*, at 98. The lender, Norstar Bank, argued that the sale proceeds it received, pursuant to the assignment, did not make it a statutory trustee of the funds for the benefit of subcontractors. *Id.* at 99. The parties, however, agreed that if the sale proceeds were paid to the developer/owner, he would be a lien law statutory trustee of trust funds, because the proceeds would be "funds ... received by an owner for or in connection with an improvement of real property." The court held that the bank was a statutory trustee, because "[t]he bank's rights, as assignee of the contract, were no greater than the rights of [the developer/owner] as assignor, whose rights to the proceeds of the sale were subject to the rights of the plaintiffs, as beneficiaries of the statutory trust." *Id.*

Here, as in *Aspro*, if the Demolition Funds were in the hands of NMP, they would constitute trust funds and NMP would be a lien law trustee. However, it is unclear whether the Demolition Funds are still in the hands of NMP because the identity of the current holder of the account where the Demolition Funds were deposited, remains in doubt. It appears from the evidence on record that Garrison is currently the only party with the power to direct disposition of the deposit account and the sums contained therein, which supports the inference that NMP assigned its rights to the deposit account to one of its lenders, UBS, StabFund, and/or Garrison.

13

If NMP assigned its rights to the deposit account to one or more of the Lenders, that lender would be a lien law trustee of the Demolition Funds under the holding of *Aspro*. *See Aspro*, at 99.

In addition, even if NMP were the current holder of the deposit account, Gateway can maintain an action for diversion of trust assets against Garrison, StabFund and/or UBS as transferees of such assets if Demolition Funds were transferred from the deposit account to one or more of the Lenders. *See* Lien Law §§ 72(1), (3)(b), 77(1); *LeChase Data/Telecom Services, LLC v Goebert*, 6 NY3d 281, 289 (2006) ("Section 77 authorizes a trust beneficiary to recover trust assets from anyone to whom they have been diverted with notice of their trust status.").

> Any transaction by which any trust asset is paid, transferred, or applied for any purpose other than a purpose of the trust . . ., before payment or discharge of all trust claims with respect to the trust, is a diversion of trust assets, whether or not there are trust claims in existence at the time of the transaction.

Lien Law § 71(1).

The Lenders' representations regarding the current balance of the deposit account suggest that Demolition Funds might have been diverted. NMP deposited $2 million in Demolition Funds in the deposit account with UBS. However, only $888,470.45 were paid to Gateway for demolition work under the Demolition Contract. This leaves an unaccounted balance of $1,111,529.55. During oral argument, the court asked the Lenders' counsel about the current balance of Demolition Funds in the deposit account. He responded: "It's pretty much used up. . . . I think there is a small balance." Transcript, at 22:25, 23:1-4. If less then half of the funds were used for a trust purpose – in this case demolition – and only a "small balance" remains in the account, then sufficient evidence exists to suggest that some funds were used for non-trust

purposes. Further discovery is needed as to the current status, balance, and prior activity on the deposit account and the Lenders' status as potential lien law trustees or transferees of trust funds. Relatedly, Gateway is entitled to receive from Garrison, StabFund, and UBS disclosure that is relevant to whether one or more of the Lenders were ever in the position of a lien-law trustee of the Demolition Funds, or a transferee of such funds with notice. This includes discovery of the status, ownership, balance, and prior activity on the deposit account. The Lenders' motion for protective order is, therefore, denied as to such relevant discovery.

The Lenders also seek to amend the caption to excise the "John Doe" defendants. These are the trust fund beneficiaries on behalf of whom Gateway brings this prospective class action. "[W]hile a Lien Law dispute must initially be brought in a representative capacity, it can only be maintained in that form if the applicable procedural prerequisites are met." *In re Peters*, 90 BR 588, 594 (Bankr Ct NDNY 1988). Under CPLR § 902, "in an action brought as a class action, the plaintiff shall move for an order to determine whether it is to be so maintained" within sixty days "after the time to serve a responsive pleading has expired for all persons named as defendants." NMP's and the Lenders' motions to dismiss extended their time to serve answers to the third-party complaint "until ten days after service of notice of entry of the order." *See* CPLR § 3211(f). Therefore, Gateway's motion for class action certification is not yet due, and, *a fortiori*, the court cannot presently decide this issue. The Lenders' motion to amend the caption to excise the "John Doe" defendants is denied.

However, the Lenders' motion to sever Gateway's claims against the third-party defendants as unrelated to the merits of the principal foreclosure controversy, is granted. *See Baseball Office of the Commissioner v March & McLennan, Inc.*, 295 AD2d 73, 78-79 (1st Dept

15

2002) (describing circumstances where severance of claims is appropriate); *see also First Union Mortgage Corp. v Fern*, 298 AD2d 490, 491 (2d Dept 2002) (severance of claim appropriate where claim seeks damages that do not affect validity of mortgage). The court has determined that the only funds constituting trust assets in this controversy are the Demolition Funds. Gateway's claim to these funds as a lien law trust beneficiary is unrelated to the validity of Garrison's Mortgage on the Property. Hence, severance of Gateway's claims from the principal foreclosure action is proper under CPLR § 603. Accordingly, it is

ORDERED that Garrison's motion for summary judgment on its foreclosure claim is denied without prejudice to remaking the motion with proper documentation; and it is further

ORDERED that NMP is liable to Garrison for default interest and reasonable attorney's fees and that the issue of the amount of default interest and reasonable attorney's fees under the Note and Loan Agreement, is referred to a Special Referee to hear and report; and it is further

ORDERED that counsel for Garrison shall, within 30 days from the date of this order, serve a copy of this order with notice of entry, together with a completed information sheet upon the Special Referee Clerk in the Motion Support Office, who is directed to place this matter on the calendar of the Special Referee's Part and notify the parties of that date; and it is further

ORDERED that NMP's motion to dismiss Gateway's third-party complaint is denied; and it is further

ORDERED that the Lenders' motion to dismiss Gateway's third party-complaint is denied; and it is further

ORDERED that the Lenders' motion to excise the "John Doe" defendants from the

caption is denied; and it is further

ORDERED that the Lenders' motion for a protective order from Gateway's discovery requests is denied to the extent described in this order; and it is further

ORDERED that the Lenders' motion to sever Gateway's third-party complaint from the principal foreclosure action is granted and both actions shall continue, the principal action under Index No. 650087/10 and the third-party complaint under Index No. 590548/10.

Dated: February 17, 2011                    ENTER:

                                            _____
                                                    J.S.C.