# EXHIBIT B

SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY

PRESENT: **JUSTICE SHIRLEY WERNER KORNREICH**  PART 54

| | |
|---|---|
| Index Number : 650087/2010 | INDEX NO. 650087/2010 |
| **GARRISON COMMERCIAL** | MOTION DATE 06/30/11 |
| vs. | MOTION SEQ. NO. 008 |
| **NMP-GROUP LLC,** | MOTION CAL. NO. _____ |
| SEQUENCE NUMBER : 008 | |
| PARTIAL SUMMARY JUDGMENT | |

this motion to/for _____

| | PAPERS NUMBERED |
|---|---|
| Notice of Motion/ Order to Show Cause — Affidavits — Exhibits ... | 116 - 124 - 1 |
| Answering Affidavits — Exhibits ✓ | |
| Replying Affidavits ✓ | |

Cross-Motion: ☐ Yes ☒ No

※ transcript dated June 30, 2011

Upon the foregoing papers, it is ordered that this motion

**MOTION IS DECIDED IN ACCORDANCE WITH ACCOMPANYING MEMORANDUM DECISION AND ORDER.**

Dated: 9/23/11

JUSTICE SHIRLEY WERNER KORNREICH, J.S.C.

Check one: ☐ FINAL DISPOSITION  ☒ NON-FINAL DISPOSITION

Check if appropriate: ☐ DO NOT POST  ☐ REFERENCE

☐ SUBMIT ORDER/ JUDG.  ☐ SETTLE ORDER/ JUDG.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: PART 54
---------------------------------------------------------------X  **DECISION & ORDER**
GARRISON COMMERCIAL FUNDING IV
REO LLC,

        Plaintiff,      Index No. 650087/2010

  -against-

NMP-GROUP LLC, ET. AL.,

        Defendants.
---------------------------------------------------------------X
**KORNREICH, SHIRLEY WERNER, J.:**

  This is a renewed motion for partial summary judgment on a foreclosure and sale of mortgage claim (the first cause of action) by plaintiff, Garrison Commercial Funding IV REO LLC (Garrison), which is the current holder of a mortgage on real property located at 21 E. 33rd Street, 172 Madison Avenue and 176 Madison Avenue, in Manhattan (the Property). Defendants Gateway Demolition Corp. (Gateway) and Yates Restoration Group, LTD. (Yates) – two companies that hold mechanic's liens on the Property – oppose the renewed motion.

I. *Background*

  A. *Prior Decision*

  Most relevant facts are set forth in detail in this court's February 17, 2011 decision (Prior Decision) with which the reader's familiarity is assumed. The abbreviations used below mirror those in the Prior Decision.

  In brief, on November 6, 2007, UBS Real Estate Securities Inc. (UBS) loaned $29 million to NMP-Group LLC (NMP). In return, NMP executed a Mortgage, Security Agreement, Assignment of Rent and Fixture Filing (the Mortgage) which granted UBS a security interest in

1

the Property and on certain fixtures and personal property of NMP. The Mortgage was recorded on November 26, 2007. *See* Doherty Aff. Exh. A., Mortgage: "Recording and Endorsement Cover Page." NMP also executed and delivered to UBS a promissory note (the Note) requiring NMP to pay the outstanding principal and accrued interest on the Note by November 9, 2009. On April 2, 2009, UBS assigned its interests under the Note and Mortgage to StabFund (USA) Inc. (StabFund), which then assigned its interests to Garrison on April 8, 2010.

On July 26, 2010, Garrison moved for partial summary judgment on its first and fourth causes of action – foreclosure and sale of the mortgage and attorney's fees and costs. In connection with this motion Garrison sought, *inter alia*, to: (1) strike the answers of defendants NMP, Gateway, Yates, and Perimeter Bridge & Scaffold Co. (Perimeter) and the affirmative defenses contained in those answers to the first and fourth causes of action; (2) determine that any lien held by the Criminal Court of the City of New York or the New York City Environmental Control Board are subordinate to the Mortgage; (3) sever the third-party complaint alleged by Gateway for trial separate and apart from Garrison's claim for foreclosure;[1] and (4) amend the caption to excise "John Doe" Defendants 1 through 12.

NMP opposed the motion. In its Prior Decision, the court determined that,

> Garrison has submitted affidavits by persons with personal knowledge of the transaction that NMP failed to pay the outstanding balance of the principal and accrued interest under the Note, prior to the maturity date of November 9, 2009. NMP does not dispute this allegation. Under the Loan Agreement, such failure constituted an "Event of Default." Having demonstrated proof of the mortgage and an event of default, the mortgagee, Garrison, makes a *prima facie* case that it is entitled to summary judgment on its foreclosure claim. *See CitiFinancial Company (DE) v McKinney*, 27 AD3d 224, 226 (1st Dept 2006).

---

[1] In the Prior Decision, the court ordered that the third-party complaint continue as a separate action under Index No. 590548/2010 (the Severed Action).

2

*See* Prior Decision, at 6.

In opposition, NMP claimed that its default was caused by UBS's failure to pay requisitions within a reasonable time, as required by the Loan Agreement. In support of this claim, NMP submitted an affidavit by its attorney and principal alleging that UBS's delays in paying requisitions delayed the demolition of the Property, which "materially effected [sic] NMP's ability to either obtain the additional financing necessary to pay the Construction Loan, and/or materially effected [sic] NMP's ability to refinance the loan." *See* Prior Decision at 6-7.

The court found NMP's allegations conclusory and, thus, insufficient for defeating a motion for summary judgment. *See* Prior Decision at 7. It also found that NMP offered no evidentiary basis "to suggest that discovery [from the Lenders] may lead to relevant evidence." *Id.* Finally, the court determined that NMP was liable, under the Loan Agreement and the Note, for default interest and reasonable attorney's fees and costs related to the foreclosure and directed that a Special Referee be appointed to compute and report the amounts. *See* Doherty Aff. Exh. A, Loan Agreement § 2.3.3, Note art. 3 (default interest); Loan Agreement § 11.13(a)(vi), Note Art. 3, Mortgage § 9.1 (costs and attorney's fees); Prior Decision at 16 (Special Referee).

The court, however, denied Garrison's motion for partial summary judgment on its foreclosure claim – "with leave to renew on proper papers" – because Garrison failed to submit the answers of mechanic's lienor defendants Gateway, Yates, and Perimeter Bridge & Scaffold Co. (Perimeter) and, *a fortiori*, any affirmative defenses contained in those answers to Garrison's foreclosure claim. Without the answers, the court could not determine whether the mechanic's liens of these defendants were filed subsequent to the Mortgage, and, consequently, whether they were subordinate to the Mortgage.

3

B.  *Garrison's Renewed Motion and Exhibits*

In its renewed motion for partial summary judgment, Garrison has submitted competent evidence showing that the four mechanic's lienors named as defendants – Gateway, Yates, Perimeter, and HRH Construction LLC (HRH) – filed their mechanic's liens well after the date on which Garrison's Mortgage was recorded (November 26, 2007). *See* Doherty Aff. Exhs. 3, 4, 5, 7, 8. Specifically, defendant Gateway's answer to the verified complaint states that its mechanic's lien was filed on or about July 16, 2009. *See* Doherty Aff. Exh. 3 ¶ 53. Defendant Yates' answer states that its mechanic's lien was filed on or about October 13, 2009. *See* Doherty Aff. Exh. 4 ¶ 8. In its answer, defendant Perimeter states that its mechanic's lien was filed on or about May 28, 2009. *See* Doherty Aff. Exh. 5 ¶ 13. Garrison also attaches to its motion papers a verified Notice of Mechanic's Lien by HRH, which shows that HRH filed its mechanic's lien on July 23, 2009. *See* Doherty Aff. Exh. 7. In addition, HRH executed a written stipulation on March 17, 2011, which, *inter alia*, acknowledges that HRH's lien against the property is "subject and subordinate" to Garrison's Mortgage. *See* Doherty Aff. Exh. 8, at 2.

Garrison further submits evidence that the Criminal Court of the City of New York (CCNY), which has not made an appearance in this action, docketed a judgment against the borrower and owner of the Property – NMP – on December 12, 2007. *See* Doherty Aff. Exh. 9. Finally, Garrison submits evidence that the New York City Environmental Control Board (ECB) issued four fines to NMP – the first two dated June 21, 2007 in the total amount of $1633.81, a third one dated May 13, 2009 for $342.31, and the last one dated June 15, 2010 for $1,207.69. *See* Doherty Aff. Exh. 10. Garrison has paid the two ECB fines issued prior to the recordation of the Mortgage. *See* Grudzien Aff. ¶ 3, Exhibit A (payment receipt).

4

C.  *Gateway/Yates' Opposition and Exhibits*

In opposition, Gateway/Yates request that Garrison's renewed motion for partial summary judgment for foreclosure and sale of mortgage be granted only on the condition that sale proceeds – in the amount of trust funds allegedly "diverted, interest thereon, attorneys' fees, and punitive damages" – be held in escrow for the benefit of the mechanic's lienors." *See* Gateway/Yates' MOL in Opposition ¶ 4. Gateway/Yates claim that they have "identified $713,471.54 that Plaintiff [Garrison] and its predecessors-in-interest [UBS and StabFund] have or may have diverted from the Demolition Reserve fund." *See* Gateway/Yates' MOL in Opposition ¶ 5 citing Etkind Aff., Exh. 2 in the Severed Action (Index No. 590548/2010). However, during oral argument on the motion, David Etkind, counsel for Gateway/Yates, admitted that only $282,920.09 – which were used to pay taxes and utilities on the Property, following NMP's default – constituted "diverted trust funds." *See* Transcr. 6:10 -11, 7:23 - 8:11; *see also* Garrison's Reply MOL *infra*.

D.  *Garrison's Reply and Exhibits*

In reply, Garrison maintains that the "back-up documentation for the Demolition Reserve Fund" shows that no portion of the $713,471.54 identified by Gateway/Yates constitutes diverted lien law trust funds. *See* Garrison's MOL in Reply, at 3-4. A $130,500 disbursement from the Demolition Reserve Fund "was in payment of East Coast Haz Mat Removal Inc." *See* Garrison's MOL in Reply, at 4 citing Doherty Aff. Exh 1, GAR 001066-GAR 001070, GAR 001079-GAR 001082. A $300,051.45 disbursement was in payment of two draw requests by NMP in the individual amounts of $127,350 and $172,701.45. *See* Garrison's MOL in Reply, at 4 citing Doherty Aff. Exh 2, GAR 001131-GAR 001139, Exh. 3, GAR 001304-GAR 001311. The

5

amount disbursed pursuant to the first draw request by NMP, $127,350, was used to pay Gateway's invoice dated July 23, 2008 for the same amount. *See* Garrison's MOL in Reply, at 4 citing Doherty Aff. Exh 3, GAR 001311. Finally, $282,920.09 – the amount ultimately at issue here – were used to pay taxes and utilities on the Property, following NMP's default in May 2009. *See* Garrison's MOL in Reply, at 4 citing Doherty Aff. Exh 4.

II.   *Discussion*

Section 1311 of the Real Property Actions and Proceedings Law (RPAPL) entitled, "Necessary defendants," provides, in relevant part:

> Each of the following persons, whose interest is claimed to be subject and subordinate to the plaintiff's lien, shall be made a party defendant to the action:
> ... 3. Every person having any lien or incumbrance upon the real property which is claimed ***to be subject and subordinate*** to the lien of the plaintiff. [emphasis supplied]

As the First Department explained in *New Falls Corp.*,

> [t]he statute is a codification of the equitable principle that persons holding title to the premises or acquiring any right to or lien on the property subsequent to the mortgage should be made parties in the foreclosure action. The principle has its basis in the underlying function of a foreclosure proceeding–"to extinguish the rights of redemption of all those who have a subordinate interest in the property and to vest complete title in the purchaser at the judicial sale." [citations ommitted]

*New Falls Corp. v Bd. of Managers of Parkchester N. Condo., Inc.*, 10 AD3d 574, 576 (1st Dept 2004).

A.   *The Mechanic's Liens*

Garrison named as defendants in this action four mechanic's lienors: Gateway, Yates, Perimeter, and HRH. In the Prior Decision, the court determined that any mechanic's liens filed after November 26, 2007 – the date on which the Mortgage was recorded – were subordinate to

6

the Mortgage based on the following analysis:

> Lien priorities are not strictly matters of statutory creation but are governed in the first instance by the common law rule of "first in time first in right" in the absence of a statutory directive to the contrary. *City and County Savings Bank v Oak Wood Holding Corp.*, 88 Misc 2d 198, 1999-200 (Sup Ct Chemung Cty1976). By statute, a mortgage recorded subsequent to the commencement of improvements does not have priority over mechanic's liens arising out of the improvement if the mortgage contains the covenant required by Lien Law § 13(3). *See* Lien Law §§ 13(5), 13(3). Lien Law § 13(3) requires that "a building loan mortgage and every mortgage recorded subsequent to the commencement of the improvement . . . shall contain a covenant by the Mortgagor that he will receive the advances secured thereby . . . as a trust fund to be applied first for the purpose of paying the cost of improvement . . ."
>
> On the other hand, a mortgage containing the covenant is entitled to priority over a subsequently recorded mechanic's lien – even if the mortgage was recorded subsequent to commencement of the improvement – because, in that case, the statutory directive of Lien Law § 13(5) would not apply to displace the "first in time first in right" common law priority rule. *In re Plainview Realty, Inc.*, 1 BR 759, 761-62 (Bankr Ct EDNY 1980) (applying New York law) (mortgage recorded after commencement of improvement containing covenant that advances received thereunder would be applied first toward cost of improvement was entitled to priority over subsequently filed notice of mechanic's lien); *see also City and County Savings Bank*, at 199-200; *Finest Fruits, Inc. v Korean Produce Corp.*, 1988 LEXIS 9908 * 5-7 (SDNY 1988) (discussing relation between statutory directives and common law lien priorities).

*See* Prior Decision at 7-8.

Here, the Mortgage contains a covenant satisfying the requirements of Lien Law § 13(3). *See* Doherty Aff., Exh. 2, "Mortgage Security Agreement, Assignment of Rents and Fixture Filing" § 16.1(c) ("Trust Fund for Advances").[2] Hence, even if improvements commenced

---

[2] The covenant provides in pertinent part: "[i]n complaince with Section 13 of the Lien Law of the State of New York, the Borrower [NMP] will receive the advances secured by this Security Instrument [the Mortgage] and will hold the right to receive such advances as trust fund to be applied first for the purpose of paying the cost of the building(s) and other improvements located on the Individual properties before using any part of the total of the same for any other purpose."

before November 26, 2007 – the date on which the Mortgage was recorded – the Mortgage has priority over subsequently filed mechanic's liens. *See In re Plainview Realty*, at 761-62. Garrison has submitted competent evidence showing that all four mechanic's lienor defendants – Gateway, Yates, Perimeter and HRH – filed their liens after the Mortgage was recorded. *See* Doherty Aff. Exhs. 3, 4, 5, 7. Therefore, all four mechanic's liens are "subject and subordinate to" Garrison's Mortgage.

In opposition, Gateway/Yates argue that "a lender who participates in a diversion of trust funds should have its mortgage subordinated by at least the amount of the diversion." *See* Gateway/Yates' MOL in Opposition ¶ 3 citing *Church E. Gates & Co. v B. N. Builders*, 238 AD 163 (1st Dept 1933). Gateway/Yates further claim that they have "identified $713,471.54 that Plaintiff [Garrison] and its predecessors-in-interest [UBS and StabFund] have or may have diverted from the Demolition Reserve fund." *See* Gateway/Yates' MOL in Opposition ¶ 5 citing Etkind Aff., Exh. 2 in the Severed Action (Index No. 590548/2010). However, as discussed, during oral argument on the motion, Mr. Etkind, counsel for Gateway/Yates, admitted that only $282,920.09 – which were used to pay taxes and utilities on the Property, following NMP's default – constituted "diverted trust funds." *See* Transcr. 6:10 -11, 7:23 - 8:11. Gateway/Yates request as relief that Garrison's motion for summary judgment on its foreclosure claim be granted only on the condition that sale proceeds in the amount of trust funds allegedly "diverted, interest thereon, attorneys' fees, and punitive damages" be held in escrow for the benefit of the mechanic's lienors." *See* Gateway/Yates' MOL in Opposition ¶ 4.

The case cited by Gateway/Yates in support of their request is inapposite. In *Church E. Gates* the mortgagor/borrower, B. N. Builders Inc. (B. N. Builders) and mortgagee/lender bank

8

agreed that $5,000 from the loan proceeds would be applied by B. N. Builders "on account of the purchase price of certain real property owned by the bank." *See* 238 AD at 165. Evidence showed that

> a $5,000 check was executed by the bank [mortgagee] to the order of B. N. Builders, Inc. [borrower]. The representative of the bank, however, went to plaintiff's bank accompanied by Rosenstock, the president of the borrower corporation [B. N. Builders]. The $5,000 check of the savings bank was then deposited in the B. N. Builders, Inc. bank account, and at the same time the savings bank representative had the check of B. N. Builders, Inc., drawn on that same account to the order of the savings bank certified. There were no other funds in deposit.

*Id.*

The court found that

> [i]t is clear that there was immediately a diversion of the funds by the borrower which would subject the savings bank [mortgagee] to having its mortgage made a junior incumbrance to the amount diverted, at least. . . . The bank was clearly liable, for it took part in this transaction by an agreement with B. N. Builders, Inc., and had full knowledge that the mortgage contained this trust fund covenant for the benefit of mechanic's lienors. . . . A cause of action had been *prima facie* established against the bank for some relief, at least.

*Id.* at 165-66.

The case at bar is clearly distinguishable. Specifically, neither Garrison nor its predecessors-in-interest, UBS and Stabfund, can be held liable as third-party transferees of the alleged trust funds at issue here because Gateway/Yates admit that the $282,920.09 allegedly diverted were used to pay taxes and utilities on the Property. *See* Transcr. 6:10 -11, 7:23 - 8:11; *see also* Lien Law §§ 72(1), (3)(b), 77(1); *LeChase Data/Telecom Services, LLC v Goebert*, 6 NY3d 281, 289 (2006) ("Section 77 authorizes a trust beneficiary to recover trust assets from anyone to whom they have been diverted with notice of their trust status.").

9

Further, the transaction attacked by the court in *Church E. Gates* defeated the mechanic's lienor's security for repayment because it imposed a $5,000 senior mortgage on the property without increasing the property's liquidation value. Specifically, the proceeds of the mortgage were used to purchase *a different* property that was not subject to the mechanic's liens, and, thus unavailable as collateral to secure payment of the claims of the mechanic's lienors. By contrast here, the allegedly diverted funds were used to pay taxes and expenses of the very same property that is subject to, and secures payment of, the mechanic's liens.

Where the mortgage and loan agreement provide for payment of taxes, water charges and other utilities, and deduction of such payments from the advances made to the owner of the property, "[s]uch provisions have been upheld and do not fall outside the priority protection afforded to the building loan by the Lien Law." *See Home Fed. S&L Ass'n v Four Star Heights, Inc.*, 70 Misc2d 118, 123 (NYSup 1971) citing, *Iser v Herbert Mark Bldg. Corp.*, 253 N.Y. 499, 501 (1930) ("The lien for advances made in accordance with its terms is superior to the lien of a subsequent mortgagee, who takes with notice of the prior mortgage and building loan agreement.")

The Court's analysis in *Four Star Heights* is instructive:

Duo [the mechanic's lienor] argues . . . that the interest, taxes, water charges and sewer rents, . . . are items that have "nothing to do with the 'improvements' that the Lien Law was passed to protect," and that, "If anything, they should be general charges after the liens." This argument is without merit and cannot prevail. The lien of the building loan mortgage embraces the right to foreclose upon default in payment of the obligations assumed in the mortgage or upon any other breach of the conditions contained in the mortgage, the provisions of which are matters of public record and the knowledge of which is chargeable to defendants. ***The exercise of the right of priority accorded to a prior recorded mortgage is not restricted by the Lien Law to situations involving only a default in repayment of the principal amount of the loan.***

10

> Similarly *without merit is Duo's [the mechanic's lienor's] contention that* "charges (such as 'commitment charge'; brokers [sic] fees; prior taxes, assessments, water charges and sewer rents) not directly related to the improvement should not be included in this mortgage priority claim." *The building loan contract provides for such payments*, including payment of a bonus for the making of the loan, *and for the deduction of such payments from the advances made to the owner of the property*. Such provisions have been upheld and *do not fall outside the priority protection afforded to the building loan by the Lien Law*. Accordingly, Duo's first counterclaim is incapable of preventing summary judgment in favor of plaintiff, whose mortgage antedated the filing of Duo's lien. [citations omitted].

*Four Star Heights, Inc.*, 70 Misc2d at 123.

Similarly here the Mortgage was recorded and, thus, a matter of public record. Article 7 of the Mortgage entitled "RIGHTS AND REMEDIES UPON DEFAULT" provides that

> *upon the occurrence and during the continuance of any Event of Default*, Borrower [NMP] agrees that Lender [Garrison] may . . . apply *any sums then deposited* or held in escrow or otherwise by or on behalf of Lender in accordance with the terms of the Loan Agreement, this Security Instrument or any other Loan Document to the payment of the following items *in any order in its uncontrolled discretion: (i) Taxes and other charges*. . . . [emphasis added]

*See* Doherty Aff., Exh. 2, "Mortgage Security Agreement, Assignment of Rents and Fixture Filing" § 7.1(j)(i). The $282,920.09 payments at issue in Gateway/Yates' opposition were for taxes and utilities after NMP's default and, thus, provided for by the recorded Mortgage. Consequently, Gateway/Yates cannot use these payments as a basis of "preventing summary judgment in favor of plaintiff [Garrison], whose mortgage antedated the filing of [Gateway/Yates'] lien[s]." *See Star Heights, Inc.*, 70 Misc2d at 123.

In sum, the mechanic's liens of Gateway, Yates, Perimeter and HRH are "subject and subordinate to" Garrison's Mortgage. The answers of the four mechanic's lienors and the defenses contained therein are stricken. Gateway/Yates' application to place foreclosure

11

proceeds in the amount of the allegedly diverted funds, interest, attorney's fees and punitive damages in escrow for the benefit of the mechanic's lienors is denied.

B.   *The Judgment Lien of the Criminal Court of the City of New York*

Section 5203 of the CPLR provides that:

> No transfer of an interest of the judgment debtor in real property, against which property a money judgment may be enforced, is effective against the judgment creditor . . . ***from the time of the docketing*** of the judgment with the clerk of the county in which the property is located . . . [emphasis supplied]

Consequently, "[w]ith respect to real property, pursuant to CPLR 5203, a judgment becomes a lien 'from the time of the docketing of the judgment with the clerk of the county in which the property is located.'" *Suffolk County Federal Sav. & Loan Asso. v Geiger*, 57 Misc2d 184, 185-86 (NYSup 1968).

Since, the Criminal Court judgment at issue here was docketed on December 12, 2007, Garrison's Mortgage is effective against the Criminal Court as judgment creditor. The Criminal Court's judgment lien on the Property arising from this judgment against NMP, therrefore, is subordinate to Garrison's Mortgage.

C.   *The ECB Liens*

Section 28-204.1 of the New York City Administrative Code empowers the New York City Environmental Control Board (ECB) to issue a notice of violation for failure to comply with the rules enforced by the ECB against an owner of real property. The notice of violation "shall contain an order of the commissioner directing the respondent [owner] to correct the condition constituting the violation and to file with the department . . . a certification that the condition has been corrected." NY ADC § 28-204.2. A record of all unpaid judgments entered in connection

12

with a notice of violation is filed with the ECB and *"[a]n entry of a judgment on the records of the department shall constitute notice to all parties."* [emphasis supplied] NY ADC § 28-204.6.1.

> All such unpaid judgments *shall constitute a lien upon the property* named in the violation with respect to which such judgment was rendered when the amount shall have been definitely computed as a statement of account by the department, and the department shall file such statement with the department of finance for entry against the property. Such lien shall have a priority over all other liens and encumbrances except for the lien of taxes and assessments. However, *no lien created pursuant to this section 28-204.6 shall be enforced against a subsequent purchaser in good faith or mortgagee in good faith unless the requirements of section 28-204.6.1 are satisfied.* [emphasis supplied]

NY ADC § 28-204.6.1.

Garrison submits evidence that the ECB issued four notices of violation (fines) to NMP – the first two dated June 21, 2007 in the total amount of $1633.81, a third one dated May 13, 2009 for $342.31, and the last one dated June 15, 2010 for $1,207.69. *See* Doherty Aff. Exh. 10. Garrison has paid the two ECB fines issued prior the recordation of the Mortgage. *See* Grudzien Aff. ¶ 3, Exhibit A (payment receipt). Since the third and fourth fines were issued well after the date on which the Mortgage was conveyed to UBS – November 6, 2009 – UBS and the subsequent Lenders, including Garrison, were good faith mortgagees without notice of these liens. As such the liens arising from the May 13, 2009 and June 15, 2010 are subordinate to the Mortgage. To the extent that there may be other ECB liens that are senior to the Mortgage such liens can be satisfied out of the proceeds of the foreclosure sale by the officer conducting the sale. *See* RPAPL § 1354(2) ("officer shall pay out of the proceeds any liens or incumbrances placed by a city agency upon the real property which have priority over the foreclosed mortgage. The sums necessary to make those payments and redemptions are deemed expenses of the sale.").

Accordingly, it is

ORDERED that the judgment lien of the Criminal Court of the City of New York arising from a judgment against NMP-Group LLC, docketed on December 12, 2007, is subordinate to plaintiff's mortgage; and it is further

ORDERED that the judgment liens created by notice violations issued by the New York City Environmental Control Board, dated May 13, 2009 and June 15, 2010, are subordinate to plaintiff's mortgage; and it is further

ORDERED that plaintiff's renewed motion for partial summary judgment in favor of plaintiff against borrower defendant NMP-Group LLC as to the first cause of action alleged in the verified complaint for foreclosure and sale of the mortgage is granted; and it is further

ORDERED that NMP-Group LLC is liable to plaintiff for principal and interest under the Promissory Note and Loan Agreement and that the issue of the total amount of principal and interest due and owing under the Promissory Note and Loan Agreement is referred to a Special Referee to compute and report; and it is further

ORDERED that counsel for plaintiff shall, within 30 days from the date of this order, serve a copy of this order with notice of entry, together with a completed information sheet upon the Special Referee Clerk in the Motion Support Office, who is directed to place this matter on the calendar of the Special Referee's Part and notify the parties of that date; and it is further

ORDERED that the answers of defendants NMP-Group LLC, Perimeter Bridge & Scaffold Co., Gateway Demolition Corp., Yates Restoration Group Ltd. and HRH Construction LLC, and any and all affirmative defenses contained therein as to the first and fourth causes of action alleged in the verified complaint, be stricken; and it is further

14

ORDERED that the caption be amended to excise "John Doe" Defendants 1 through 12; and it is further

ORDERED that a foreclosure sale shall be held subject to plaintiff's mortgage.

Dated: September 23, 2011          ENTER:

                                   _____
                                   J.S.C.

15